UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00197-LLK

BRANDON L. SKAGGS                                                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Plaintiff's fact and law summary is at Docket # 18, and Defendant's fact and law summary is at Docket # 23. The parties have consented to the jurisdiction of the undersigned magistrate judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 13). The matter is ripe for determination.

The administrative law judge ("ALJ") erred in finding that Plaintiff's complex regional pain syndrome (CRPS) is non-severe, that he can perform light work, and that he has no limitation in his ability to maintain attention and concentration. Therefore, the Court will REMAND the matter to the Commissioner for a new decision.

### Complex regional pain syndrome (CRPS)

Plaintiff suffers from a relatively rare condition known as complex regional pain syndrome (CRPS). CRPS and its evaluation for purposes of Social Security disability are the subjects of Social Security Ruling (SSR) 03-2p, 2003 WL 22399117 ("Evaluating cases involving reflex sympathetic dystrophy syndrome / complex regional pain syndrome").

CRPS, also known as reflex sympathetic dystrophy syndrome (RSDS), is a unique clinical syndrome, which may develop following injury to bone or soft tissue (e.g., after a surgical procedure); is characterized by complaints of intense, chronic pain; and is related to autonomic (sympathetic nervous system)

1

dysfunction. SSR 03-2p, 2003 WL 22399117, at *1. Patients report persistent, burning, aching or searing pain that is initially localized to the site of the injury. Other symptoms include extreme sensitivity to touch or pressure, or abnormal sensations of heat or cold. The degree of reported pain is often out of proportion to the severity of the precipitating injury. Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb. *Id.*

Diagnosis of CRPS requires complaints of chronic pain associated with signs of swelling; changes in skin color or texture; abnormal hair or nail growth; osteoporosis; or involuntary movement of the affected region. *Id.* Treatment of CRPS is through encouraging increased limb mobility during activities of daily living, as soon as practicable, notwithstanding the pain. Various drugs and injections may be necessary to reduce pain and block sympathetic nervous system activity. Delayed treatment / mobility may result in spreading of pain and associated symptoms to the entire limb or even other body parts. *Id.*

**Plaintiff's testimony**

Plaintiff testified that he broke his right ankle in two areas, and the corrective surgery "ended up giving me complex regional pain syndrome [CRPS]." (Administrative Record ("AR"), pp. 101-02). Plaintiff's ankle hurts "constantly and [the pain] shoots all the way up into my knee." (AR, p. 101). His ankle "turns a darkish blue almost purple-like bruising color, but it's from the actual disease in my ankle." (AR, p. 98). It "swells constantly, especially if I'm on it for a long period of time where I have to ice it down." (*Id.*).

Initially, doctors tried epidural shots in Plaintiff's back as a "pain block to try to stop the [CRPS], which …. didn't work." (AR, p. 97). Physical therapy "caus[ed] more pain than … help." (*Id.*) Eventually, a doctor prescribed a special ankle brace to keep his ankle "from turning or going into a sprain position, and I [was told that I] have to wear the special brace pretty much the rest of my life." (AR, p. 89).

The ALJ observed Plaintiff walking into the administrative hearing with a limp. (AR, p. 101). Plaintiff testified that he has to elevate his leg for "at least an hour a day." (AR, p. 98). He is unable to

2

stand for longer than 20 minutes. (AR, p. 91). He is unable to walk for more than 100 yards without "having to sit down because of ankle pain." (AR, p. 90).

Plaintiff is on "different medications" for his CRPS and degenerative disc disease, but "they're not working." (AR, p. 100, 101). He takes a "pain pill" at night, which allows him "to sleep the first couple hours [but then] I'm up and down throughout the night." (AR, p. 92).

Plaintiff also suffers from bipolar disorder, panic disorder, and attention deficit hyperactivity disorder (ADHD), for which psychiatrist Llewelyn Hortillosa prescribes psychotropic medication (AR, pp. 16, 199). The combined effects of medications for Plaintiff's physical and mental impairments make him "extremely, extremely drowsy where I'm weak and tired throughout the day but mainly fatigued." (AR, p. 99).

**Background facts and procedural history**

In April 2014, Plaintiff applied for Social Security disability benefits, alleging disability due to degenerative disc disease of the neck, lumbar spine, and right ankle. (AR, pp. 12, 15).

In May 2014, orthopedic surgeon Brian Elmlinger, M.D., performed right-ankle surgery to remove a 6-mm loose body from the medial side and spurs at the lateral talocrural joint. (AR, p. 385). Following surgery, Plaintiff developed CRPS. Plaintiff's right-ankle CRPS results in significant work-related limitations in addition to those he claimed (due to degenerative disc disease) at the time he filed his application. Neither Dr. Elmlinger nor any other treating or examining medical source provided an opinion regarding Plaintiff's residual functional capacity (RFC).

In June 2014, the Commissioner's single decisionmaker (SDM) opined that, beginning in May 2015 (a year after Plaintiff's May 2015 right-ankle surgery), Plaintiff should have recovered sufficiently to have a residual functional capacity (RFC) to perform light work. (AR, pp. 128-30).

In August 2014, the Commissioner's non-examining consultant, Donna Sadler, M.D., agreed with the SDM that, beginning in May 2015, Plaintiff should be able to perform light work. (AR, p. 144). Dr.

Sadler gave the only medical opinion regarding Plaintiff's RFC. However, Dr. Sadler gave her opinion before Plaintiff developed CRPS (and, therefore, her opinion could not have taken into account the effects of Plaintiff's CRPS). Dr. Sadler opined that Plaintiff is able to perform light work, including standing/walking six hours in an eight-hour workday, frequent climbing of ramps and stairs, and occasional stooping, kneeling, crouching, and crawling. (AR, pp. 142-44). These findings are suspect because one would expect that chronic pain in a lower extremity would have some effect on abilities to stand, walk, climb, stoop, kneel, crouch, and crawl.

As indicated above, Plaintiff did not recover from the surgery as anticipated because he developed CRPS. In February 2015, Dr. Elminger noted that "we have been dealing with [CRPS] for almost 1 year [and] [t]his has really not gotten a lot better." (AR, p. 388). Despite taking Norco 10, Elavil, and Neurontin, Plaintiff experienced more pain in the Achilles and a lot of vasoconstriction. (*Id.*) "The leg is bluish about mid-shin down and very sensitive to touch in all distributions and again he is exhibiting signs of severe complex regional pain syndrome." (*Id.*) Dr. Elminger told Plaintiff that, if sympathetic nerve block injections are ineffective, "there may have to be an actual surgery to get cut the sympathetic nerves." (*Id.*). In March 2015, Plaintiff's CRPS continued unabated. (AR, p. 389). He "still has a bluish tint to the mid shin down to his foot [and] [t]here is a little bit of shiny color to his toes … very tender to just light touch." (AR, p. 389). In April 2015, "the pain has dropped down to about mid-shin so this is an improvement from previous." (AR, p. 390).

## The ALJ's Decision

In September 2016, the ALJ issued his decision. The ALJ found that Plaintiff's CRPS is non-severe and gave "great weight" to Dr. Sadler's opinion and found that Plaintiff can perform light work. (AR, pp. 16, 18, 22). Notwithstanding Plaintiff's testimony that the combined effects of medications he takes for his physical and mental impairments make him "extremely drowsy" and "fatigued" (AR, p. 99), the ALJ found that he has no limitation in his ability to maintain attention and concentration (AR, p. 18).

4

The ALJ denied Plaintiff's disability claim, finding as follows at each step of the familiar 5-step sequential evaluation process: First, Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (AR, p. 15). Second, Plaintiff has severe, or vocationally significant, degenerative disc disease of the neck; degenerative disc disease of the lumbar spine; obesity; and degenerative joint disease of the right ankle, status post multiple surgeries. (Id.). Third, Plaintiff does not suffer from an impairment that satisfied the clinical criteria of any impairment listed in Appendix 1 of the regulations. (AR, p. 17). As required for cases that advance beyond step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), finding that he has an RFC for a limited range of light work, with no mental limitations. (AR, p. 18). Fourth, Plaintiff is unable to perform his past relevant work. (AR, p. 22). Fifth, Plaintiff is not disabled because he retains the ability to perform a significant number of light jobs in the national economy. (AR, p. 23).

**The ALJ's finding that Plaintiff's CRPS is non-severe is unsupported.**

At step 2, as an aspect of the severity analysis, the Commissioner considers whether the so-called 12-month duration requirement is satisfied. *See* 42 U.S.C. § 423(d)(1)(A) ("Disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). The ALJ found that Plaintiff's CRPS is non-severe and does not satisfy the duration requirement because Dr. Elminger's April 2015 note indicated some improvement and there is no record of subsequent "ongoing treatment." (Decision at AR, p. 16 referring to note at AR, p. 390). "The medical evidence ... only shows treatment [for CRPS] for a relatively short period that is less than 12 continuous months." (*Id.*).

The ALJ's finding that Plaintiff's CRPS is non-severe and does not satisfy the duration requirement is unsupported for three reasons. First, it is unsupported in light Dr. Elminger's February 2015 note that "we have been dealing with [CRPS] for almost 1 year [and] [t]his has really not gotten a lot better" (AR, p.

5

388) and Plaintiff's April 2016 testimony that he is still experiencing ongoing, severe CRPS symptoms. Second, the ALJ's reliance on lack of documentation of "ongoing treatment" (AR, p. 16) does not comport with SSR 03-2p[1] because, typically, CRPS "signs are not present continuously, or the signs may be present at one examination and not appear at another." SSR 03-2p, 2003 WL 22399117, at *4. "Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present." *Id.* Third, the ALJ's non-severity finding did not adequately take into account the combined effects of medications. Plaintiff testified that he takes medications for his physical and mental impairments, and he testified that they make him "extremely, extremely drowsy" and "fatigued" (AR, p. 99). SSR 03-2p states that, before an ALJ finds a claimant's CRPS to be non-severe, the ALJ should inquiry into the combined effects of medications because "[w]hen evaluating duration and severity [of CRPS], as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered." SSR 03-2p, 2003 WL 22399117, at *4. "Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times." *Id.* "These factors can interfere with an individual's ability to sustain work activity over time or preclude sustained work activity altogether." *Id.*

**The ALJ's finding that Plaintiff can perform light work is unsupported.**

For purposes of steps 4 and 5, the ALJ determined Plaintiff's RFC, finding that he can perform a limited range of light work, with no mental limitation. (AR, p. 18). In determining Plaintiff's RFC, the ALJ noted that "no treating physician expressed opinions regard the claimant's ability to perform work activities"; gave "great weight" to Dr. Sadler's opinion; and found that Plaintiff is capable of performing

---

[1] Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy" upon which ALJs must rely upon in adjudicating cases. 20 C.F.R. § 402.35(b)(1).

light work, including standing/walking six hours in an eight-hour workday, frequent climbing of ramps and stairs, and occasional stooping, kneeling, crouching, and crawling. (AR, pp. 18, 22).

In the absence of a contrary treating-source opinion, an ALJ is ordinarily permitted to rely on the opinion of the Commissioner's non-examining consultant (e.g., Dr. Sadler) for purposes of determining a claimant's RFC. There will always be a gap between the time the agency experts review the record and give their opinion and the time the hearing decision is issued. *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id.* Here, Plaintiff developed right-ankle CRPS <u>after</u> Dr. Sadler had given her opinion regarding Plaintiff's limitations. Her opinion is suspect because one would expect that chronic pain in a lower extremity would affect an individual's abilities to stand/walk for six hours per eight-hour workday; frequently climb; and occasionally stoop, kneel, crouch, and crawl. Therefore, a judicial remand is required because the new evidence (concerning Plaintiff's CRPS) rendered Dr. Sadler's opinion untenable.

Additionally, in determining Plaintiff's RFC, the ALJ was required to consider the combined effects of all impairments, physical and mental, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B). The ALJ's RFC determination does not reflect adequate consideration of the combined effects of Plaintiff's acknowledged severe impairments (degenerative disc disease of the neck; degenerative disc disease of the lumbar spine; obesity; and degenerative joint disease of the right ankle, status post multiple surgeries) (AR, p. 15); his CRPS, which the ALJ found to be non-severe; and his bipolar disorder, panic disorder, and attention deficit hyperactivity disorder (ADHD), which the ALJ found to be non-severe (AR, p. 16).

### The ALJ's finding that Plaintiff has no limitation in his ability to maintain attention and concentration is unsupported.

The ALJ's finding that Plaintiff has no vocationally-significant mental limitation (AR, p. 18) is unsupported. As noted above, Plaintiff suffers from CRPS and degenerative disc disease, for which he takes pain and other medications. In addition, he suffers from mental impairments, for which he takes

7

psychotropic medication. (AR, pp. 16, 99). Plaintiff testified that the combined effects of the medications he takes for his physical and mental impairments make him "extremely, extremely drowsy" and "fatigued" during the day. (AR, p. 99). One would expect the combined effects of medications to have some impact on Plaintiff's ability to maintain attention and concentration.

**Order**

For the foregoing reasons, this matter is REMANDED to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

October 24, 2018

Lanny King, Magistrate Judge
United States District Court